

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| HARRY SCHIPPER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff <br><br> vs. <br><br> TXU CORP., C. JOHN WILDER, JAMES OESTERREICHER, KERNEY LADAY, SR., JACK LITTLE, GLENN TILTON, LEONARD ROBERTS, E. GAIL DE PLANQUE, LELDON E. ECHOLS, GERARDO LOPEZ, and MICHAEL RANGER <br><br> Defendants | CIVIL ACTION NO. <br><br> 3-07CV1281-G <br><br> JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff, Harry Schipper, by and through his undersigned attorneys, alleges upon information and belief (said information and belief being based, in part, upon the investigation conducted by and through his undersigned counsel), except with respect to his ownership of shares of common stock of TXU Corp. ("TXU" or the "Company") and his suitability to serve as a class representative, which allegations are based upon personal knowledge, against defendants as follows:

## INTRODUCTION

1. This class action arises under Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78n(a), and the rules and regulations of the Securities and Exchange Commission ("SEC") promulgated thereunder, in connection with the solicitation of proxies in favor of a proposed management-led $45 billion leveraged buy-out (the "LBO") of

TXU to take it private at $69.25 cash per share to be accomplished by means of a proposed merger (the "Merger").

2. If the LBO and the Merger are approved, the TXU public shareholders' valuable interest in the Company will be acquired by private equity investors Texas Pacific Group ("TPG") and Kohlberg Kravis Roberts & Co. ("KKR") (collectively, the "Sponsors") for inadequate consideration following a flawed process and their right to participate in TXU's profitable business will cease.

3. The LBO and the Merger were negotiated and approved by the Board of Directors of TXU by means of a biased and flawed bidding process that did not represent the intrinsic value of the Company or its value going-forward premised on its ability to generate strong earnings and expand to meet growing energy demand in the southwest.

4. Shareholder proxies in favor of the LBO and the Merger are being sought pursuant to a materially false and misleading proxy statement filed with the SEC on or about June 14, 2007.

5. As alleged in detail below, the proxy statement is materially false and misleading in violation of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9 promulgated by the SEC thereunder, in that, among other things, the proxy statement does not truthfully or adequately describe among other things (a) material background information regarding the transaction, (b) the Director Defendants' consideration of the transaction, (c) their efforts, if any, to obtain an alternate transaction or alternative strategic opportunity on terms more favorable to plaintiff and the Company's other public shareholders, (d) the financial analysis supporting the fairness of the transaction to TXU's public shareholders, and (e) the Director Defendants' consideration of or response to certain derivative litigation currently

pending against them in the District Court of Dallas County, Texas, captioned *In re TXU Corp. Derivative Litigation*, No. 07-01779 (44th Judicial District).

## JURISDICTION AND VENUE

6. The Court has subject-matter jurisdiction over this action pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1331, as the action arises under the laws of the United States.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), as defendant TXU maintains its principal place of business within this judicial district and some or all of the acts or practices complained of herein, including the preparation and creation of a materially false and misleading proxy statement, occurred within this judicial district.

## PARTIES

8. Plaintiff Harry Schipper, a resident of New Jersey, is and has been an owner of shares of defendant TXU common stock at all relevant times alleged herein.

9. Defendant TXU is a holding corporation organized and existing under the laws of the State of Texas. TXU maintains its principal offices in this district at 1601 Bryan Street, Dallas, Texas 75201-3411. TXU manages a portfolio of competitive and regulated energy businesses in Texas. The Company, through its subsidiary, TXU Energy Company LLC, engages in electricity generation, residential and business retail electricity sales, and wholesale power and natural gas market activities; and through another subsidiary, TXU Electric Delivery Company, engages in regulated electricity transmission and distribution operations providing power to approximately 3 million electric delivery points. TXU serves residential and small businesses, municipalities, electric co-operatives, and other distribution companies.

10. The Company's stock is traded in an orderly and efficient market on the New York Stock Exchange under the symbol "TXU."

11. Defendant C. John Wilder is and has served as a director of the Company since 2004, and as Chairman and Chief Executive Officer of TXU since 2005. This defendant can be served at 1601 Bryan Street, Dallas, Texas 75201-3411. In connection with the Merger, Wilder (i) is entitled to receive severance and payments of $9,791,667; (ii) will receive deferred shares that will be converted into the right to receive cash in an amount equal to $69.25 per share, which would result in an aggregate cash out value of $74,863,164, pursuant to the Company's Long Term Investment Plan; (iii) will receive $2,927,696 in accelerated vesting of deferred compensation plans; (iv) will receive 300,000 shares for each of the two subsequent years pursuant to the terms of his employment agreement, which at $69.25 per share has a cash value of $41,550,000; (v) will continue to receive health care benefits and fringe benefits; (vi) will receive payment to offset any "golden parachute" excise taxes; and (vii) will be granted a right to indemnification for acts or omissions occurring prior to the consummation of the Merger.

12. Defendant James E. Oesterreicher is and has served as a director of the Company since 1996. This defendant can be served at 1601 Bryan Street, Dallas, Texas 75201-3411. In connection with the Merger, Oesterreicher (i) will receive an accelerated vesting of 29,094 shares pursuant to TXU's deferred compensation plan, which at $69.25 per share has a cash value of $2,014,759.50; and (ii) will be granted a right to indemnification for acts or omissions occurring prior to the consummation of the Merger.

13. Defendant Leonard H. Roberts is and has served as a director of the Company since 2005. In connection with the Merger, Roberts (i) will receive an accelerated vesting of 1,883 shares pursuant to TXU's deferred compensation plan, which at $69.25 per share has a cash value of $130,397.75; and (ii) will be granted a right to indemnification for acts or omissions occurring prior to the consummation of the Merger.

14. Defendant Kerney Laday, Sr., is and has served as a director of the Company since 1993. This defendant can be served at 1601 Bryan Street, Dallas, Texas 75201-3411. In connection with the Merger, Laday (i) will receive an accelerated vesting of 10,055 shares pursuant to TXU's deferred compensation plan, which at $69.25 per share has a cash value of $696,308.75; and (ii) will be granted a right to indemnification for acts or omissions occurring prior to the consummation of the Merger.

15. Defendant Jack E. Little is and has served as a director of the Company since 2001. This defendant can be served at 1601 Bryan Street, Dallas, Texas 75201-3411. In connection with the Merger, Little (i) will receive an accelerated vesting of 27,899 shares pursuant to TXU's deferred compensation plan, which at $69.25 per share has a cash value of $1,932,005.75; and (ii) will be granted a right to indemnification for acts or omissions occurring prior to the consummation of the Merger.

16. Defendant Glenn F. Tilton is and has served as a director of the Company since 2005. This defendant can be served at 1601 Bryan Street, Dallas, Texas 75201-3411. In connection with the Merger, Tilton (i) will receive an accelerated vesting of 2,792 shares pursuant to TXU's deferred compensation plan, which at $69.25 per share has a cash value of $193,346; and (ii) will be granted a right to indemnification for acts or omissions occurring prior to the consummation of the Merger.

17. Defendant E. Gail De Planque has served as a director of the Company since 2004. De Planque resigned as a director on March 2, 2007. This defendant can be served at 1601 Bryan Street, Dallas, Texas 75201-3411. In connection with the Merger, De Planque (i) will receive an accelerated vesting of 3,350 shares pursuant to TXU's deferred compensation

plan, which at $69.25 per share has a cash value of $231,987.50; and (ii) will be granted a right to indemnification for acts or omissions occurring prior to the consummation of the Merger.

18. Defendant Leldon E. Echols is and has served as a director of the Company since 2005. This defendant can be served at 1601 Bryan Street, Dallas, Texas 75201-3411. In connection with the Merger, Echols will be granted a right to indemnification for acts or omissions occurring prior to the consummation of the Merger.

19. Defendant Gerardo Lopez is and has served as a director of the Company since 2006. This defendant can be served at 1601 Bryan Street, Dallas, Texas 75201-3411. In connection with the Merger, Lopez will be granted a right to indemnification for acts or omissions occurring prior to the consummation of the Merger.

20. Defendant Michael Ranger is and has served as a director of the Company since 2003. This defendant can be served at 1601 Bryan Street, Dallas, Texas 75201-3411. In connection with the Merger, Ranger (i) will receive an accelerated vesting of 20,041 shares pursuant to TXU's deferred compensation plan, which at $69.25 per share has a cash value of $1,387,839.25; and (ii) will be granted a right to indemnification for acts or omissions occurring prior to the consummation of the Merger.

21. The individual defendants named herein are referred to collectively as the "Director Defendants."

22. The Director Defendants, by reason of their corporate directorships or executive positions, are fiduciaries to and for the Company's stockholders, which fiduciary relationship requires them to exercise their best judgment, and to act in a prudent manner and in the best interests of the Company's stockholders.

23. Each Director Defendant herein is sued individually as a conspirator and aider and abettor, as well as in his capacity as an officer or director of the Company, and the liability of each arises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

24. Further, each Director Defendant has also breached their fiduciary duty of disclosure in that on June 14, 2007, they filed with the SEC a Proxy in connection with the Merger, but failed to disclose certain material information which a reasonable shareholder would find material in determining whether to vote for the Merger.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action on his own behalf and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all other TXU common stockholders whose proxies are being solicited (the "Class"). The Class does not include defendants herein, any person, firm, trust, corporation, or other entity related to or affiliated with any of the defendants, or their successors in interest.

26. The Class of shareholders for whose benefit this action is brought is so numerous that joinder of all Class members is impracticable. According to the Form 10-Q the Company filed with the SEC on November 9, 2006, as of November 6, 2006, there were 459,240,549 shares of defendant TXU common stock outstanding owned by thousands of shareholders of record scattered throughout the United States.

27. There are questions of law and fact which are common to members of the Class. These common questions of law and fact predominate over any questions affecting any individual members. The common questions include, *inter alia*, the following:

    a. whether the Company's proxy statement is materially false or misleading;

b. whether any one or more of the defendants has engaged in a plan and scheme to solicit proxies from plaintiff and the other members of the Class pursuant to a false and misleading proxy statement;

c. whether the proxy statement violates Section 14(a) of the Exchange Act or Rule 14a-9 promulgated by the SEC, 17 CFR ¶ 240.14a-9.

d. whether the defendants have failed to disclose the true value of defendant TXU's assets and earning power and the future financial benefits which KKR and TPG will obtain from the acquisition;

e. whether the Director Defendants made false and misleading statements and untrue statements of material facts in connection with the solicitation of proxies in favor of the LBO and the Merger;

f. whether plaintiff and the other members of the Class will be irreparably damaged by the solicitation of proxies in favor of the transactions complained of herein;

g. whether the solicitation of proxies in favor of the LBO and the Merger should be preliminarily or permanently enjoined; and

h. whether plaintiff and the other members of the Class have been injured and, if so, what measure of damages is proper.

28. Plaintiff's claims arise out of the same facts as the claims of all other members of the Class, and plaintiff asserts the same legal theories as other members of the Class. Thus, plaintiff's claims are typical of those of all other Class members.

29. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff has no differing interest from the other

members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

30. A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted and no unusual difficulties are likely to be encountered in the management of this action as a class action. The likelihood of individual class members prosecuting separate claims is remote.

## SUBSTANTIVE ALLEGATIONS

31. By the acts, transactions, and courses of conduct alleged herein, defendants, individually and as part of a common plan and scheme or aiding and abetting one another in total disregard of their fiduciary duties, are attempting to deprive plaintiff and the Class of the true value of their investment in the Company.

32. On Monday, February 26, 2007, TXU announced that it executed a definitive agreement to be acquired by KKR and TPG in a "leveraged buyout" transaction at a price of $69.25 per share in cash. The total transaction is valued at approximately $45 billion, which includes the assumption of approximately $14 billion in debt obligation.

33. The transaction price of $69.25 per share represented a scant 15% premium to the $60.02 closing price on Friday, February 23, 2007.

34. The agreement has been structured as a "leveraged buyout" transaction. Assisted by current management, KKR and TPG will borrow against TXU's assets, adding debt to TXU's balance sheet and reducing the amount KKR and TPG will have to pay out of their own pockets or the equity in their managed funds. According to Bloomberg News, TXU spokeswoman Lisa Singleton said that, "about $12 billion in debt will be assumed."

35. Bloomberg also reported that, "investors are providing $8.5 billion in cash and the rest of the deal will be debt, according to people familiar with the matter."

36. The consortium of investment banks providing committed financing to the investor group in support of the transaction includes Citigroup, Goldman Sachs, JP Morgan, Lehman Brothers and Morgan Stanley. According to the press release announcing the agreement, "GS Capital Partners, Lehman Brothers, Citigroup and Morgan Stanley intend to be equity investors at closing." Accordingly, several of the banks loaning the money to facilitate the transaction will also be owners of the private entity. Thus, those banks stand to earn substantial financing and structuring fees on the leverage side of the deal while enjoying the benefits of owning a prosperous company like TXU. Indeed, once TXU is taken public again, those same banks will enjoy substantial returns on their equity investments in addition to fees they earned to finance the deal.

37. Bloomberg further reported that, "credit-default swaps on TXU debt soared, signaling that investors now consider the debt to be riskier. Moody's Investors Service said it's reviewing the Ba1 rating on TXU senior unsecured debt for a possible downgrade on concern that the company's financial profile 'will experience a significant increase in leverage' from the takeover."

38. If the agreement is consummated, TXU management, KKR and TPG will obtain a continuing interest in the Company's business going forward, thereby taking advantage of TXU's future growth and capture such value for themselves to the detriment of TXU's public shareholders at an inadequate price.

39. The consideration to be paid to TXU's public stockholders is grossly unfair, inadequate, and substantially below the fair or inherent value of the Company. TXU's public stockholders will be denied their right to share proportionately in the true value of TXU's

valuable assets, profitable business, and future growth in profits and earnings, while usurping the same for the benefit of defendants KKR and TPG.

40. The proposed "leveraged buyout" acquisition transaction is wrongful, unfair and harmful to TXU's public stockholders, the Class members, and represents an attempt by defendants to aggrandize the personal and financial positions and interests of board members at the expense of and to the detriment of the stockholders of the Company. The proposed transaction will deny plaintiff and other Class members their rights to share appropriately in the true value of the Company's assets and future growth in profits and earnings, while usurping the same for the benefit of defendants KKR and TPG, and senior management at an unfair and inadequate price.

41. Defendants timed the LBO and the Merger to take advantage of the Company's improving performance. According to AP Business Writer David Koenig, "private-equity firms have often steered clear of utilities, viewing them as highly regulated businesses with relatively low return on investment. But Texas deregulated its electricity market in 2002, and TXU is generating tremendous amounts of cash and profit – Wall Street expects the company to report Tuesday that it earned about $2.5 billion in 2006."

42. *Bloomberg* reported that Perry Sioshansi, president of Menlo Energy Economics, a consulting firm in Walnut Creek, California, said that TXU "turned into a good cash machine." According to *Bloomberg*, "TXU, after almost going bankrupt in 2002 because of a failed overseas expansion, has rebounded and may earn $2.6 billion in 2006, up 51 percent from a year earlier, according to the average of six analyst estimates compiled by *Bloomberg*. Natural-gas prices that more than tripled this decade have raised Texas power prices, making TXU's coal and nuclear plants more valuable."

43. In light of the foregoing, the Director Defendants have breached their fiduciary duties to maximize stockholder value and have not fully informed themselves about whether greater value can be achieved through the sale of the Company to a third party in a manner designed to obtain the highest possible price for TXU's public stockholders and without placing the Company's balance sheet at risk.

44. On June 14, 2007, TXU filed with the SEC a Preliminary Proxy Statement concerning the proposed transaction (the "Proxy Statement").

## COUNT I
## VIOLATION OF § 14(a) OF THE EXCHANGE ACT, 15 USC § 78n(a) AND RULE 14a-9, 17 CFR § 240-14a-9

45. This claim is asserted against all defendants. Plaintiff repeats and realleges paragraphs 1 through 44 herein.

46. In a proxy statement, the defendants are obligated to provide shareholders with all material information relevant to the proposed transaction to allow an informed decision by shareholders.

47. The Proxy Statement described herein is a proxy solicitation within the meaning of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

48. The Company is the issuer of the Proxy Statement and the board of directors ordered the issuance of the Proxy Statement and each had a duty pursuant to Federal law to disclose all material and relevant information in the Proxy Statement and assure themselves that the Proxy Statement is accurate and complete. The defendants, however, have violated their obligations of full and accurate disclosure in authorizing the dissemination to plaintiff and TXU's other shareholders of a Proxy Statement that misrepresents material facts and omits material information necessary to be disclosed in order for shareholders to make an informed decision concerning the transaction in the following respects:

    a. The Proxy Statement fails to provide TXU shareholders with information concerning the initiation of contact leading to the execution of the merger agreement. The Proxy Statement fails to disclose whether one of the Sponsors, a member of TXU's board or management, or a third party initiated such contact.

    b. The Proxy Statement fails to explain the substance of the discussions among members of the Strategic Transaction Committee (as defined in the Proxy

Statement purportedly to include only independent directors) and management during the period from January 22, 2007, through February 25, 2007.

    c.    The Proxy Statement fails to summarize in a cogent and simple manner the compensation costs associated with the transaction, including, *inter alia*, tax gross-ups, severance obligations, monetization of vested and unvested options.

    d.    The Proxy Statement fails to detail whether members of the Sponsors and management or the Company's board or management had any material, pre-existing relationships, including joint board service or business relationships.

    e.    The Proxy Statement fails to detail information concerning the Company's and Sponsors' efforts to garner support for the LBO and the Merger from both the environmental lobby and legislature.

    f.    The Proxy Statement should detail why, as reported in the press, the Company will be a better environmental citizen as a private company than was possible as a public entity.

    g.    The Proxy Statement fails to provide adequate detail concerning the "go-shop" process, including whether any party requested but was denied information or access to Company information or management and whether any possible bidder expressed, in writing or otherwise, concerns with respect to such process. For example, the Proxy Statement fails to disclose whether any party advised the Company that management or the Strategic Transaction Committee was interfering with a full and fair "go-shop" process.

    h.    The Proxy Statement includes the full text of the February 25, 2007 fairness opinion of Credit Suisse Securities (USA) LLC ("Credit Suisse"), TXU's financial advisor. The Proxy Statement also contains a summary of the material financial analyses

reviewed with the board of directors in connection with Credit Suisse's opinion. The Proxy Statement fails to explain the rationale supporting Credit Suisse's use of a terminal value figure range of 7.0x to 8.25x EBITDA given that the discount rates applied to the respective business segments EBITDA figure were not materially higher. The Proxy Statement fails to explain whether the high terminal values are industry specific or specific to TXU because plants are expected to come on-line after 2012.

    i. The Proxy Statement fails to detail how Credit Suisse concluded that the discount rates it employed were accurate and appropriate relative to Credit Suisse's analysis of the Company's weighted average cost of capital and internal rates of return.

    j. The Proxy Statement also includes the full text of the February 25, 2007 fairness opinion of Lazard Frères & Co. LLC ("Lazard"), financial advisor to the Strategic Transactions Committee of the Board of Directors and the full Board of Directors. The Proxy Statement reveals discrepancies between some of the figures presented by Lazard and the calculations and valuations detailed in the Proxy Statement.

    k. The Proxy Statement fails to detail whether Lazard's or Credit Suisse's opinions changed since the date of the merger agreement based on subsequent earnings announcements, modifications to projections, or changes in assumptions stemming from either financial, global, industry specific, or Company specific occurrences.

  49. The Proxy Statement is intended to be relied on by shareholders to form the basis of the decision they make with regard to the proposed transaction.

  50. The defendants knew or should have known of the misrepresentations and omissions described above. Material information was concealed from shareholders such that shareholders would be more likely to vote in favor of the proposed transaction. The non-

disclosures render the Proxy Statement materially false and misleading because it fails to provide shareholders with all information necessary to make an informed decision about the proposed transaction.

51. The defendants had at their disposal and within their control all of the information necessary to make a full and complete disclosure.

52. By failing to make accurate and complete disclosure the defendants have made it impossible for the plaintiff and other shareholders to adequately analyze the proposed transaction.

53. As a direct and proximate result of the defendants' negligent breach of duty, plaintiff is entitled to injunctive relief. Unless enjoined, plaintiff and the shareholders will be required to vote on the proposed transaction without the benefit of complete and accurate information.

54. These actions will result in irreparable harm to plaintiff and the other TXU shareholders.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment against the defendants, jointly, severally, or individually in the alternative, as follows:

A. an order certifying this action as a class action and appointing plaintiff and his counsel as representatives of the Class;

B. an order declaring the acts and practices of defendants alleged herein unlawful;

C. an order preliminarily and permanently enjoining the solicitation of proxies in favor of the LBO and the Merger pursuant to the materially false and misleading Proxy Statement;

D.      judgment awarding plaintiff and other members of the Class their damages, together with interest and costs, including attorneys' fees, and experts' fees;

E.      punitive or exemplary damages as allowed by law; and

F.      such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), plaintiff hereby demands a trial by jury of all issues so triable.

Dated: July 19, 2007

Respectfully submitted,

Roger L. Mandel
State Bar No. 12891750
Martin Woodward
State Bar No. 00797693
**STANLEY, MANDEL & IOLA, L.L.P.**
3100 Monticello Avenue, Suite 750
Dallas, Texas 75205
(214) 443-4300 (Telephone)
(214) 443-0358 (Fax)

Mark C. Rifkin     x
Gregory M. Nespole   *pN*
Gustavo F. Bruckner   *NR*
Matthew Guiney    x
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
(212) 545-4600 (Telephone)
(212) 545-4653 (Fax)

Bernard Malina         *NR*
**MALINA & ASSOCIATES, P.C.**
60 East 42nd Street, Suite 510
New York, NY 10165
(212) 986-7410 (Telephone)

*Attorneys for Plaintiff*

JS 44 (Rev. 10/06) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
HARRY SCHIPPER, Individually and on Behalf of All Others Similarly Situated,

### DEFENDANTS
TXU Corp., C. John Wilder, James Oesterreicher, Kerney Laday, Sr., Jack Little, Glenn Tilton, Leonard Roberts, E. Gail De Planque, Eldon E. Echols, Gerado Lopez, and Michael Ranger

(b) County of Residence of First Listed Plaintiff: **Bergen, NJ**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: **Dallas**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name): Roger L. Mandel, Stanley, Mandel & Iola, L.L.P.
3100 Monticello Ave., Ste 750, Dallas, TX 75205
(214) 443-4300 (Telephone)

Attorneys (If Known): **3-07CV1281-G**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)

## IV. NATURE OF SUIT (Place an "X" in One Box Only)
☒ 850 Securities/Commodities/Exchange

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing: **15 U.S.C. §78n(a)**
Brief description of cause: **Class Action for Violation of §14(a) of the Exchange Act**

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) PENDING OR CLOSED
See Attached

DATE: 7/19/07
SIGNATURE OF ATTORNEY OF RECORD: [signature]

VIII.   RELATED CASE(S) PENDING OR CLOSED

Judge Barbara M. G. Lynn, Docket No. 3-07CV0406-M, *Gottdiener v. Echols, et al.*
Judge Sam A. Lindsay, Docket No. 3:07-CV-0422-L, *Cohen v. Echols, et al.*,
Judge Sam A. Lindsay, Docket No. 3-07-CV-0432-L, *Staehr v. Echols, et al.*,